WILLIAMS ENVIRONMENTAL LAW
LUCAS WILLIAMS (State Bar No. 264518)
JACOB JANZEN (State Bar No. 313474)
490 43rd Street, #23
Oakland, CA 94609
Telephone: (707) 849-5198
Facsimile: (510) 609-3360
lucas@williams-envirolaw.com
jake@williams-envirolaw.com

LEXINGTON LAW GROUP
Howard Hirsch (State Bar No. 213209)
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
hhirsch@lexlawgroup.com

Attorneys for Plaintiff
ENVIRONMENTAL DEMOCRACY PROJECT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL DEMOCRACY PROJECT, a California not-for-profit corporation,<br><br>                  Plaintiff,<br><br>   v.<br><br>GREEN SAGE MANAGEMENT, LLC, a Colorado Limited Liability Corporation,<br><br>                  Defendant. | **COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF**<br><br>[Clean Air Act, 42 U.S.C. § 7604(a)] |

**INTRODUCTION**

1. Defendant Green Sage Management, LLC (Defendant) has been violating the Clean Air Act for nearly two years. Defendant owns and operates an indoor cannabis cultivation facility located at 5601 and 5733 San Leandro Street, Oakland, California 94621 (the Facility). There is an artist live/work space with 32 residents located at the Facility. To supply the Facility with power, Defendant has been operating up to nine massive diesel generators twenty-four hours a day, seven days a week, since July 2020. The generators are the size of eighteen-wheeler trucks. In violation of the Clean Air Act, Defendant has not obtained air quality permits for the generators. Plaintiff Environmental Democracy Project, a non-profit environmental justice organization based in East Oakland (Plaintiff or EDP), seeks to put an immediate end to Defendant's Clean Air Act violations and to deter future violations.

2. Defendant's unpermitted, semi-truck size generators have emitted tons of cancer-causing diesel particulate matter (DPM) and other pollutants that are inhaled deeply into the lungs of residents of the Facility's live/workspace. Residents of the densely populated community of color located just east of the Facility's generators are also exposed to the Facility's pollution. The generators' emissions are not mitigated by any pollution limits or control technology because Defendant failed to obtain air quality permits before operating the generators.

3. Defendant's failure to obtain air quality permits for the generators violates the Clean Air Act's preconstruction permitting requirements as set forth in the Bay Area Air Quality Management District's (the District) Regulation 2, Rules 1-301 and 1-302.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 2201 (actions for declaratory relief), and 42 U.S.C. § 7604(a) (the Clean Air Act's citizen suit provision).

5. Venue is proper in the Northern District of California under 42 U.S.C. § 7604 because the Facility—where the violations have occurred and continue to occur—is located in this District. In addition, Plaintiff's officers, who are directly impacted by the Facility's air pollution, live in this District.

6. On April 12, 2022, Plaintiff gave notice of Defendant's violations and Plaintiff's intent to file suit under the Clean Air Act. Plaintiff served notice by certified mail return receipt requested to Defendant, the Administrator of the United States Environmental Protection Agency (EPA), the Regional Administrator for Region IX of the Environmental Protection Agency, the District, and the California Air Resources Board. *See* 40 C.F.R. § 54.2(a)-(c). Plaintiff also mailed a copy of the notice to the Governor of California. *Id.* § 54.2(b). The notice of violation described in detail Defendant's Clean Air Act violations—*i.e.*, Defendant's failure to obtain an authority to construct and permit to operate for the diesel generators. Defendant did not respond to Plaintiff's notice of violation. The notice of violation is attached hereto as **Exhibit A.**

7. More than sixty days have passed since service of Plaintiff's notice of violation described above. Defendant remains in violation of the Clean Air Act. Neither EPA, the state, nor the District have commenced, nor are diligently prosecuting, a civil action in a court of the United States or any state to require compliance with the Clean Air Act. *See* 42 U.S.C. § 7604(b)(1)(B).

**PARTIES**

Plaintiff Environmental Democracy Project

8. Plaintiff Environmental Democracy Project is a 501(c)(3) nonprofit corporation dedicated to representing communities of color exposed to disproportionate amounts of pollution. EDP is based in East Oakland. Several of EDP's officers live near the Facility and are exposed to the Facility's pollution on a daily basis.

9. Defendant Green Sage Management LLC is a limited liability corporation organized under the laws of the State of Colorado. Defendant is an owner or operator of

the enormous unpermitted diesel generators that have been used at the Facility since on or around July 30, 2020.

10.  EDP's Executive Director, Tanya Boyce, lives in East Oakland near the Facility.  She lives within the area impacted by the Facility's DPM pollution.  In addition, one of EDP's Board Members, Alistair Monroe, lives at the artist live/work space known as the "the Cannery" at 5733 San Leandro Street, Oakland, California 9462, where several of the Facility's unpermitted diesel generators are located.  The fumes from the generators permeate the live/work space and cause residents, including Mr. Monroe, to become nauseous.  The fumes from the generators are visible and have created a black soot stain on the Facility's external walls.  Ms. Boyce and Mr. Monroe are injured by the increased health risks and poor air quality caused by the Facility's unpermitted pollution.

11.  EDP and its officers have been involved in community organizing, outreach, scientific analysis, and public education efforts related to the unpermitted generators' impacts on health and the environment in the East Oakland community of color where they are located.  EDP's officers have spoken at numerous public hearings in opposition to the unpermitted generators.

12.  The concrete interests EDP seeks to vindicate in this action—namely, addressing environmental racism, protecting air quality, ensuring compliance with environmental laws, and ensuring the public's right to participate in government decision-making processes—are within the purposes and goals of the organization.  Plaintiff brings this action on behalf of itself and its members, including Mr. Monroe and Ms. Boyce, who live near the Facility.

13.  Defendant's Clean Air Act violations pose an imminent threat to the health, happiness, and livelihood of Mr. Monroe and Ms. Boyce, who live and recreate near the Facility.  The increased pollution and unregulated emissions of highly toxic chemicals—which could have been avoided had Defendant complied with the Clean Air Act—impact the health, economic, informational, organizational, and conservational interests of Mr.

Monroe and Ms. Boyce. For instance, if Defendant had followed the permitting rules, the District could have required Defendant to conduct air quality monitoring, thereby serving EDP's informational interest in providing impacted communities with data concerning the quality of the air they breathe. Thus, EDP and its members have been, and continue to be, adversely affected by Defendant's violations of the Clean Air Act, which cause the emission of tons of toxic air contaminants in the low-income community of color surrounding the Facility.

14. Mr. Monroe and Ms. Boyce have constitutional standing to sue individually under the Clean Air Act for the violations alleged in this complaint. Nevertheless, their individual participation is not necessary for a just resolution of this case.

15. EDP, Mr. Monroe, and Ms. Boyce are "persons" within the meaning of the Clean Air Act, 42 U.S.C. §7604(a). Should the Court grant the relief requested by EDP in the present action—civil penalties, injunctive relief, and declaratory relief—the harm to EDP, Mr. Monroe, and Ms. Boyce alleged in this complaint will be redressed, *i.e.*, by stopping the illegal pollution and deterring future illegal pollution

## STATUTORY BACKGROUND

16. Defendant's operation of unpermitted diesel generators violates the Clean Air Act. The Clean Air Act sets out a comprehensive regulatory scheme designed to prevent and control air pollution. Congress passed the Clean Air Act to prevent air pollution and to protect and enhance the quality of the nation's air resources to promote the public health and welfare. 42 U.S.C. § 7401. The statute directs EPA to prescribe national ambient air quality standards at a level sufficient to protect the public health and welfare. 42 U.S.C. § 7409(a) & (b).

17. The Clean Air Act is implemented jointly by the United States Environmental Protection Agency (EPA) and the states. The Clean Air Act requires each state to adopt and submit to EPA for approval a State Implementation Plan (SIP). 42 U.S.C. § 7410. SIPs provide the mechanism for states to ensure compliance with national

air quality standards. *Id.* § 7410(a)(2)(A), § 7502(c)(6). Once approved by EPA, SIPs become federal law and are enforceable under the Clean Air Act. *See* 42 U.S.C. §§ 7413, 7604. EPA has approved elements of California's SIP, including each of the preconstruction permitting requirements at issue in this case. *See* 40 C.F.R. § 52.220(c)(502)(i)(A)(1).

18. The District is the governmental agency charged with the primary responsibility for controlling air pollution from stationary sources in all or portions of the nine Bay Area counties, including all of Alameda County, under the Clean Air Act. The District's responsibility includes adopting and enforcing rules and regulations relating to air pollution and maintaining healthy air quality.

19. The Clean Air Act authorizes any person to commence a civil action on her own behalf against any person "who is alleged to have violated (if there is evidence that alleged violation has been repeated) or to be in violation of . . . an emission standard or limitation . . . ." 42 U.S.C. § 7604(a)(1). The terms "emission limitation" and "emission standard" mean a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction, and any design, equipment, work practice or operational standard promulgated under this chapter. 42 U.S.C. § 7602(k). Preconstruction permits such as an authority to construct and permit to operate under the District's rules are emissions standards or limitations because, among other things, they allow the District to impose pollution control conditions on facilities that emit pollutants.

20. This Court has jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce emission standards or limitations. 42 U.S.C. § 7604(a).

21. The District has established rules regarding preconstruction permits that are EPA-approved and federally-enforceable components of California's SIP. 40 C.F.R. §

52.220(c)(502)(i)(A)(1); *Revisions to California State Implementation Plan; Bay Area Air Quality Management District*, 83 Fed. Reg. 23372-01.[2]

22. The District's EPA-approved rules state that any person that puts in place any equipment that may cause the emission of an air pollutant must first obtain an "authority to construct." Regulation 2, Rule 1-301. Likewise, the District's EPA-approved rules state that any person that operates any equipment that may cause the emission of air contaminants must first obtain a "permit to operate." Regulation 2, Rule 1-302.

23. These preconstruction permits are important because the District can impose conditions on the equipment "to ensure compliance with federal or California law or District regulations." *See* Regulation 2, Rule 1-403. These conditions can include Best Available Control Technology and/or a Health Risk Assessment.

## THE POLLUTION FROM DEFENDANT'S GENERATORS IS HARMFUL TO HUMAN HEALTH AND AIR QUALITY

24. The Facility's generators have emitted over ten tons of DPM since they began operating on or around July 30, 2020. The generators have also emitted significant amounts of particulate matter, volatile organic compounds, nitrous oxides, and sulfur dioxide—harmful pollutants that create smog and exacerbate respiratory conditions. The generators emit greenhouse gases as well.

25. The East Oakland community surrounding the Facility is a community that already suffers from high rates of adverse health conditions, like asthma and cardiovascular disease, which are linked to the high levels of pollution in the area. According to CalEnviroScreen 4.0, a screening tool created by the Office of Environmental Health and Hazard Assessment to help identify communities disproportionately burdened by pollution and with population characteristics that make

---

[2] *See also* EPA-Approved Bay Area Air District Regulations in the California SIP, https://www.epa.gov/sips-ca/epa-approved-bay-area-air-district-regulations-california-sip.

them more sensitive to pollution, the East Oakland community near the Facility is adversely affected by pollution to a greater extent than 91% of California. The East Oakland community is also a low-income community, with 85% of households living under the poverty line, and a community of color, with a population that is 66% Latinx and 21% African American.

26. More than 90% of DPM is a thousand times smaller than the diameter of a human hair. DPM is inhaled by individuals and deposited in the deepest regions of the lungs where the lung is most susceptible to injury.

27. DPM is a chemical known to cause cancer under California law. 27 Cal. Code Regs. § 27001(b). DPM includes over forty substances that are listed by EPA as hazardous air pollutants and by the California Air Resources Board as toxic air contaminants. These highly toxic substances include acetaldehyde, antimony compounds, arsenic, benzene, beryllium compounds, bis(2- ethylhexyl)phthalatedioxins and dibenzofurans, formaldehyde, inorganic lead, mercury compounds, nickel, POM (including PAHs), and styrene.

28. DPM exposures cause negative health effects including premature death, hospitalizations, and emergency department visits for exacerbated chronic heart and lung disease, including asthma, increased respiratory symptoms, and decreased lung function in children.

29. DPM emitted from the Facility is inhaled by individuals living in the area surrounding the Facility including Ms. Boyce and Mr. Monroe, officers of Plaintiff. They are exposed to harmful air pollutants as a direct result of Defendant's air emissions. The exposures threaten their health, and cause injury to their recreational and aesthetic interests. Defendant's violations directly injure Plaintiff by polluting the air with dangerous and cancer-causing pollutants that impair Plaintiff's members use and enjoyment of the ambient air.

**DEFENDANT'S CLEAN AIR ACT VIOLATIONS**

30. Defendant began operating large diesel generators in violation of the Clean Air Act in or around July 30, 2020. The Facility failed to obtain an authority to construct or permit to operate before operating the generators. Defendant has been operating the generators all day, every day, for nearly two years.

31. Defendant's conduct violates the Clean Air Act. Any person that puts in place any equipment that may cause the emission of air contaminants must first obtain an authority to construct. District Regulation 2, Rule 1-301. Defendant did not obtain an authority to construct prior to operating the massive diesel generators at the Facility. Defendant's failure to obtain an authority to construct violates the Clean Air Act.

32. In addition, any person that operates any equipment that may cause the emission of air contaminants must first obtain a permit to operate. District Regulation 2, Rule 1-302. Defendant did not obtain a permit to operate prior to operating the massive diesel generators at the Facility. Defendant's failure to obtain a permit to operate violates the Clean Air Act.

33. Portable generators cannot provide "primary power" to a facility without first obtaining an air quality permit from the District. 13 Cal. Code Regs. § 2453(m)(4)(E). Defendant's generators provide primary power to the Facility; and they have done so for nearly two years. Defendant's use of the generators is not due to any "unforeseen" power interruption or any other exception to the Clean Air Act's preconstruction permit requirements. *See* 13 Cal. Code Regs. § 2453(m)(4)(E)(1).

34. Without the issuance of injunctive and declaratory relief and the assessment of civil penalties, Defendant will continue to operate the unpermitted diesel generators, releasing excess emissions of harmful pollutants to the further injury of Plaintiff and the environment.

35. The Court's issuance of injunctive and declaratory relief and imposition of civil penalties is necessary to require Defendant to discontinue its current violations and

deter it from committing future ones—thereby redressing the injuries caused by Defendant's violations.

## FIRST CAUSE OF ACTION

**Violations of the Clean Air Act, 42 U.S.C. § 7604(a);
Declaratory and Injunctive Relief and Civil Penalties**

36.  Plaintiff realleges and incorporates by reference the paragraphs above.

37.  Defendant has operated up to nine diesel generators for nearly two years without having first obtained an authority to construct from the District. Defendant's failure to obtain an authority to construct violates District Regulation 2, Rule 1-301.

38.  Defendant has operated up to nine diesel generators for nearly two years without having first obtained a permit to operate from the District. Defendant's failure to obtain a permit to operate violates District Regulation 2, Rule 1-302.

39.  The District's Regulation 2, Rule 1-301 and Regulation 2, Rule 1-302 have been approved by EPA as part of California's State Implementation Plan. The District's rules requiring polluting facilities to obtain authorities to construct and permits to operate are emissions standards and limitations under 42 U.S.C. § 7604(a).

40.  As a result of Defendant's failure to obtain an authority to construct or permit to operate, Plaintiff's members have been, and continue to be, exposed to harmful air pollution that will increase the likelihood of health risks including cancer. The Facility's pollution would have been controlled or curtailed if Defendant had complied with the Clean Air Act.

41.  Defendant's violations are ongoing and will continue unless enjoined by the Court. Plaintiff is entitled to an order from this Court enjoining the use of the unpermitted generators.

42.  Each day that Defendant operates the generators in violation of the Clean Air Act is a separate violation of the statute. Plaintiff is entitled to an award of civil penalties for each day Defendant operates the generators.

43. Plaintiff is entitled to a declaration from the Court that Defendant has failed to obtain Clean Air Act preconstruction permits for the diesel generators it has been operating for nearly two years, and directing Defendant to cease use of the generators immediately.

## PRAYER FOR RELIEF

A. An injunction requiring Defendant to immediately cease operating all unpermitted generators;

B. An order requiring Defendant to pay civil penalties in the maximum amount allowable under the Clean Air Act and an order that such civil penalties, in lieu of being deposited with the United States Treasury, be used in a beneficial mitigation project which enhances public health or the environment;

C. A declaration from the Court that Defendant is in violation of the Clean Air Act and District Rules for failure to obtain preconstruction permits for the generators;

D. An order requiring Defendant to pay Plaintiff's reasonable attorney fees and costs.

E. An order granting any other relief that may be just.

Dated:   July 6, 2022                    Respectfully submitted,

WILLIAMS ENVIRONMENTAL LAW


/s/ Lucas Williams
Lucas Williams

Attorneys for Defendant
ENVIRONMENTAL DEMOCRACY
PROJECT

# EXHIBIT A

**Williams | Environmental Law**

490 43rd Street, #23
Oakland, CA 94609
(707) 849-5198 (cell)
Lucas@williams-envirolaw.com
www.williams-envirolaw.com

April 12, 2022
*By Certified Mail—Return Receipt Requested*

Kenneth E. Greer Jr., Manager
Green Sage Management, LLC
1250 Humboldt Street, Ste. 1203
Denver, CO 80218

Green Sage Management, LLC
C T Corporation System (C0168406)
330 N. Brand Boulevard, Ste. 700
Glendale, CA 91203

Martha Guzman, Regional Administrator
Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Michael S. Regan, Administrator
Environmental Protection Agency
Headquarters
1200 Pennsylvania Ave, N.W.
Washington, DC  20460

Air Pollution Control Officer
Bay Area Air Quality Management District
375 Beale Street, Ste. 600
San Francisco, CA 94105

Richard Corey, Executive Officer
California Air Resources Board
1001 I Street, Ste. 2828
Sacramento, CA 95814

Re:   Notice of Intent to File Suit Under the Clean Air Act

We write to notify you that Green Sage Management, LLC's cannabis operation located at or near 5601 and 5733 San Leandro Street in Oakland, CA, 94621 (the Facility) is in violation of the Clean Air Act.  The Facility has been using at least seven large diesel generators to provide power to the Facility.  The Facility has been operating the generators for at least twenty months without having first obtained an authority to construct or permit to operate the generators from the Bay Area Air Quality Management District.  This conduct violates the Clean Air Act.

This notice is sent on behalf of Environmental Democracy Project whose members are impacted by the Facility's illegal diesel emissions.  The Facility has emitted, and continues to emit, significant amounts of diesel pollution into the surrounding community, including the live/work space adjacent to the generators.  The Facility is located in East Oakland, a community

of color that is already overburdened by industrial pollution. Yet the Facility has failed to obtain the air permits required by the Clean Air Act and California's State Implementation Plan.

The Facility's conduct jeopardizes the health and safety of the East Oakland community. For over twenty months, the Facility has emitted diesel particulate matter throughout the neighborhood, infiltrating residences, and entering the lungs of residents and community members. Inexplicably, the Bay Area Air Quality Management District has allowed the Facility to continue to operate despite its violations of the Clean Air Act. The Project seeks to put an end to the Facility's violations of the Clean Air Act and deter future violations.

The Clean Air Act requires that citizens give sixty days' notice of their intent to file suit. 42 U.S.C. § 7604(b). The Project hereby provides notice to Green Sage Management, LLC that it has violated and continues to violate the Clean Air Act by violating the Bay Area Air Quality Management District's (the District) rules. The District's rules are federally enforceable requirements that are part of California's State Implementation Plan. The Facility has violated and continues to violate the law by operating the Facility without having first obtained an authority to construct and permit to operate from the District, and causing a public nuisance.

The Project intends to promptly bring suit under the Clean Air Act after expiration of sixty days from the date of this letter. The lawsuit will be filed in the United States District Court for the Northern District of California. The Project intends to seek the maximum penalties authorized by law as well as its attorney fees and costs. If Green Sage Management, LLC would like to discuss this matter before the lawsuit is filed, please contact counsel for the Project immediately.

I.  **The Facility Operates at Least Seven Unpermitted Diesel Generators in an Overburdened Community of Color.**

The Facility has operated and continues to operate large diesel generators without the preconstruction permits required under the Clean Air Act. The Facility is located in East Oakland. The neighborhood is a community of color that is already overburdened by numerous industrial sources, including other cannabis operations using diesel generators. Residents and community members—including members of the Project—are exposed to highly toxic diesel pollution from the Facility.

In response to citizen complaints, the District issued a Notice of Violation to the Facility. The Facility continues to operate the diesel generators despite receiving this notice.

Notice of Violation of Clean Air Act                                                                         Page 3
April 12, 2022

Inexplicably, the District has allowed the Facility to operate despite its ongoing violations of the Clean Air Act. The Project has no choice but to pursue its own Clean Air Act lawsuit.

## II.     Clean Air Act Requirements.

The Clean Air Act is implemented jointly by EPA and the states. The statute requires each state to adopt and submit to EPA for approval a State Implementation Plan, or SIP. 42 U.S.C. § 7410. SIPs provide the mechanism for states to ensure compliance with the air quality standards. *Id.* § 7410(a)(2)(A), § 7502(c)(6). Once approved by EPA, SIPs become federal law and are enforceable under the Clean Air Act. *See* 42 U.S.C. §§ 7413, 7604. EPA has approved elements of California's State Implementation Plan. 42 C.F.R. § 52.220. The District's rules regarding preconstruction permits and nuisance are federally-enforceable components of California's State Implementation Plan. *See id*; https://www.epa.gov/sips-ca/epa-approved-bay-area-air-district-regulations-california-sip.

Violations of the Clean Air Act and California's State Implementation Plan are enforceable through the Act's citizen suit provision. 42 U.S.C. § 7604(a); *id.* § 7604(f)(4). A citizen suit may proceed to federal court sixty days after the notice letter, unless either EPA or the District has commenced and is diligently prosecuting a civil action in federal or state court. 42 U.S.C. § 7604(b)(1). This letter provides notice of the Facility's violations.

## III.    The Facility's Clean Air Act Violations.

The Facility began operating large diesel generators in violation of the Clean Air Act in or around July 2020. The Facility failed to obtain an authority to construct before operating the generators. Any person that puts in place any equipment that may cause the emission of air contaminants must first obtain an authority to construct. District Rule 2-1-301. The Facility did not do so.

The Facility has operated and continues to operate the generators in violation of the Clean Air Act. Any person that operates any equipment that may cause the mission of air contaminants must first obtain a permit to operate. District Rule 2-1-302. The Facility did not do so.

The Facility's operation has caused and continues to cause a nuisance. The District's rules prohibit emissions that cause injury, detriment, nuisance or annoyance to any considerable number of persons or the public. District Rule 1-1-301. The excessive diesel particulate emissions from the Facility have caused and continue to cause a nuisance. Thus, the Facility is in violation of District Rule 1-1-301.

Notice of Violation of Clean Air Act Page 4
April 12, 2022

These District rules are incorporated into California's State Implementation Plan and are emissions limitations under the Clean Air Act. Thus, the Facility is in violation of the Clean Air Act.

**IV.     Potential Resolution During 60-day Period.**

The entity giving this notice is the Environmental Democracy Project, who may only be contacted through counsel. Counsel representing the Project in this matter are:

Lucas Williams
Jacob Janzen
Williams Environmental Law
490 43rd Street, #23
Oakland, CA 94609
707.849.5198
lucas@williams-envirolaw.com

During the sixty-day notice period, the Project is willing to discuss effective remedies for the violations of the Clean Air Act at issue in this notice. If you wish to pursue such discussions, we suggest that you initiate them as soon as possible so that the discussions may be completed before the end of the sixty-day notice period. We do not intend to delay the filing of a complaint in federal court if the discussions fail to resolve these matters within the notice period, and we intend to seek all appropriate relief, including preliminary and permanent injunctive relief, civil penalties, and all costs of litigation, including, but not limited to, attorney fees, expert witness fees and other costs.

We believe this notice provides information sufficient for you to determine the violations of the Clean Air Act at issue. If, however, you have any questions, please also feel free to contact us for clarification.

Notice of Violation of Clean Air Act  Page 5
April 12, 2022

    We look forward to hearing from you.

                        Respectfully,

                        <u>/s/ Lucas Williams</u>
                        Lucas Williams
                        Jacob Janzen
                        Attorneys for Environmental Democracy
                        Project