1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

ENVIRONMENTAL DEMOCRACY
PROJECT,

Case No. 22-cv-03970-JST

8

Plaintiff,

**ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION**

9

v.

10

GREEN SAGE MANAGEMENT, LLC,

Re: ECF No. 8

11

Defendant.

12
13

     Before the Court is Plaintiff Environmental Democracy Project's ex parte application for a

14

temporary restraining order ("TRO") and order to show cause why a preliminary injunction should

15

not issue. ECF No. 8. On July 13, 2022, the Court denied the application for a TRO and

16

converted the motion to one for a preliminary injunction. ECF No. 13. Defendant Green Sage

17

Management, LLC, opposed the motion, ECF No. 18, and Plaintiff replied, ECF No. 19.

18

**I.      BACKGROUND**

19

     Defendant manages two properties at 5601 and 5733 San Leandro Street in Oakland,

20

California.[1] ECF No. 18 at 1. Tenants of these properties include an indoor cannabis facility

21

("Facility") and 32 residents living in an artist live/work space. ECF No. 1 ¶ 1. Plaintiff alleges

22

that Defendant has relied on portable diesel generators to provide the Facility with power twenty-

23

four hours a day, seven days a week, since July 2020. *Id.* According to the complaint, these

24

generators pollute the community's air with "DPM," "greenhouse gases," and "particulate matter,

25

volatile organic compounds, nitrous oxides, and sulfur dioxide." *Id.* ¶ 24. The effects are alleged

26
27
28

---

[1] It is not clear from the briefs whether Defendant is the property manager for the two properties,
ECF No. 18 at 1, owns and operates the cannabis facility, ECF No. 1 ¶ 1, or both. Under either
identification, the Court's reasoning remains the same.

United States District Court
Northern District of California

to be significant – DPM exposure can cause, among other things, cancer, premature death, chronic heart and lung disease, and increased respiratory symptoms.  *Id.* ¶¶ 27-28.

Plaintiff alleges that Defendant has been violating the Clean Air Act ("CAA") by operating up to nine diesel generators for over two years without obtaining an "authority to construct" and a "permit to operate."  *Id.* ¶¶ 31-32.

**II.     JURISDICTION**

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**III.    LEGAL STANDARD**

The Court applies a familiar four-factor test on both a motion for a temporary restraining order and a motion for a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest.  *Id.* at 20.  "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation marks omitted).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'"  *Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (citing *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).  But, if a court does make factual findings or conclusions "when evaluating the merits of a preliminary injunction motion," those findings and conclusions "are not binding at trial on the merits."  *See Purdum v. Wolfe*, No. C-13-04816 DMR, 2014 WL 171546, at *4 (N.D. Cal. Jan. 15, 2014) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

1

United States District Court
Northern District of California

## IV.    DISCUSSION

### A.    Likelihood of Success on the Merits

The dispute in this case concerns regulations promulgated by the Bay Area Air Quality Management District (the "District") and the California Air Resources Board ("CARB").

The District is a local entity responsible for implementing CAA preconstruction permitting requirements in California.  Under the District's rules, any person who uses or operates equipment that emits air contaminants must "first secure written authorization from the [District's Air Pollution Control Officer ('APCO')] in the form of an authority to construct," and "a permit to operate."   BAAQMD Regulation 2, Rules 1-301 & 1-302.  These rules are EPA approved and enforceable by the Court.  *See* 40 C.F.R. § 52.220(c)(502)(i)(A)(1); 42 U.S.C. § 7604(a)(1).  The CARB registration program creates an exception for portable engines and equipment units, allowing them to operate without District authorization or permits.  13 Cal. Code Regs. § 2450(a).  However, not all portable engines qualify under CARB.  A portable engine does not qualify if (1) it operates at the same location for more than one year, 13 Cal. Code Regs. § 2452(dd); (2) it powers a generator that provides primary or supplemental power to a building (unless there are unforeseen interruptions of electrical power from the serving utility), 13 Cal Code Regs. § 2453(m)(E)(1); and/or (3) it powers a generator that is used in conjunction with an electrical upgrade for more than 90 calendar days, 13 Cal Code Regs. § 2453(m)(E)(3).

The key issue in this case is whether the District's permitting rules or the CARB registration program applies to Defendant's generators.  Plaintiff argues that the generators do not qualify for the CARB program because they "have been operating twenty-four hours a day at the same location for over two years," and "there has not been any unforeseen power failure or electrical upgrade, and the generators have been operated for more than 90 days."  ECF No. 19 at 3.  Defendant maintains that the CARB registration program controls and states, in a conclusory manner, that "[n]one of these exceptions to CARB preemption apply here."  ECF No. 18 at 4.  Notably, Defendant neither explains *why* the CARB exceptions do not apply nor rebuts the allegation that it has been operating the generators "twenty-four hours a day, seven days a week, since July 2020."  ECF No. 8-4 ¶ 3.

1   Based on this record, the Court concludes that Plaintiff is likely to establish that the

2   District's permitting rules apply and that the generators do not qualify for the CARB registration

3   program.  It also is undisputed that the District never issued permits for any of the portable diesel

4   engines powering the generators.  *See* ECF No. 18 at 13.  Therefore, Plaintiff is likely to succeed

5   on the merits.

6          **B.**       **Likelihood of Irreparable Harm**

7   "Environmental injury, by its nature, can seldom be adequately remedied by money

8   damages and is often permanent or at least of long duration, i.e., irreparable."  *Sierra Club v.*

9   *United States Forest Serv.*, 843 F.2d 1190, 1195 (9th Cir. 1988) (quotation marks, citation, and

10  alterations omitted); *see also United States v. Gear Box Z Inc.*, 526 F. Supp. 3d 522, 528 (D. Ariz.

11  2021) ("[T]he irreparable harm at issue here is obvious.  Emissions of harmful pollutants damage

12  human health and the environment.").  Here, the record demonstrates that the generators are being

13  used without valid permits and the "[d]iesel generator exhaust fumes pose a grave risk to the

14  health and safety of residents and employees."  ECF No. 8-3 at 1-5.  This is sufficient to establish

15  a risk of irreparable physical and procedural harm.  *See Save Our Summers v. Wash. State Dep't of*

16  *Ecology*, 132 F. Supp. 2d 896, 905 (E.D. Wash. 1999) ("The risk of physical injury from

17  continued [wheat stubble] burning is sufficient to establish a risk of irreparable harm."); *Save*

18  *Strawberry Canyon v. Dep't of Energy*, 613 F. Supp. 2d 1177, 1189 (N.D. Cal. 2009) ("The

19  procedural injury is also irreparable—even if a NEPA review might later be conducted,

20  implementing regulations specify when NEPA review must be conducted and limit the agency's

21  ability to proceed with major federal actions absent the proper procedures beyond specified

22  stages[.]").

23  Defendant argues that because "Plaintiff delayed seeking relief for two years . . . there is

24  no actual imminent and irreparable harm."  ECF No. 18 at 4.  Although the Court relied on this

25  fact in denying Plaintiff's motion for a temporary restraining order, ECF No. 13 at 2-3, the case

26  was in a different procedural posture then.  Plaintiff's delay in seeking relief was a principle

27  ground of the Court's finding that "Plaintiff [had] fail[ed] to establish 'immediate and irreparable

28  injury, loss, or damage' *before Defendant can be heard in opposition*."  *Id.* at 2 (emphasis added).

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1  Now that Defendant has been able to respond to Plaintiff's motion, this factor carries less weight.

2  Also, Plaintiff has now provided the Court with a reasonable explanation for the delay.  Plaintiff

3  states that it only "learned that Defendant had failed to obtain Clean Air Act permits in early April

4  2022."  ECF No. 19 at 4.  On April 12, 2022, it "served a 60-day Notice of Violation of the Clean

5  Air Act—a prerequisite to filing this action, 42 U.S.C. 7604(a)."  *Id.*  Approximately one month

6  after the 60-day notice period expired, Plaintiff filed this action and motion.  *Id.*  Thus, the "delay

7  was not unreasonable under the circumstances and does not undermine [Plaintiff's] claims of

8  irreparable harm."  *Boldface Licensing %8F Branding v. By Lee Tillett, Inc.*, 940 F. Supp. 2d

9  1178, 1197 (C.D. Cal. 2013); *cf. Cal. Physicians Serv., Inc. v. Healthplan Servs., Inc.*, No. 3:18-

10  cv-03730-JD, 2021 WL 879797, at *7 (N.D. Cal. March 9, 2021) (failure to present a "good

11  explanation" for a three-year delay in bringing the suit "cuts against a finding of irreparable

12  harm").

13      **C.      Balance of Equities**

14      Plaintiff must show that "the balance of equities tips in [its] favor, and that an injunction is

15  in the public interest."  *Winter*, 555 U.S. at 20.  The court "must balance the competing claims of

16  injury and must consider the effect on each party of the granting or withholding of the requested

17  relief."  *Id.* at 24 (quotation marks and citation omitted).

18      As described above, Plaintiff has identified irreparable health and environmental harms

19  that are likely to occur absent an injunction.  Defendant responds that it will suffer "significant

20  economic hardship" if the Court grants the preliminary injunction.  ECF No. 18 at 5.  Specifically,

21  ceasing the operation of these generators "will result in a complete loss of all cannabis crops,"

22  resulting in an economic loss "in excess of fifty million dollars," as well as more than 2,600

23  "direct and indirect job losses."  *Id.*

24      Plaintiff criticizes Defendant for "utterly fail[ing] to explain how obtaining air quality

25  permits will cause a $50 million loss, or . . . 2,600 lost jobs" and asks the Court to "ignore

26  Defendant's bare assertions of potential economic harm."  ECF No. 19 at 6.  In support of this

27  criticism, Plaintiff cites *Save Strawberry Canyon*, 613 F. Supp. 2d at 1190.  In that case, the

28  defendants estimated that they would suffer $7,300,000 if the court granted an injunction to delay

5

construction for a research facility. *Id.* The court found these estimates "entirely conclusory," "unexplained," and "somewhat implausible." *Id.* Here, while the Court finds it plausible – or even likely – that shutting off the generators that power a cannabis facility might kill the cannabis crops, the bare, conclusory statements in Defendant's declaration are insufficient to establish the magnitude of the asserted harm.

Regardless of that magnitude, however, the Court would still find the balance of equities favors Plaintiff because Defendant's alleged harms are self-inflicted. Defendant chose to operate a cannabis facility at properties that do not possess "reliable electrical power." ECF No. 18-1 at 2. Defendant then chose to maintain the facility at that location by using unpermitted diesel generators for power. ECF No. 18 at 5. Nothing in the record suggests that Defendant attempted to obtain permits or authorization, or replace its power source, after it received the fire department's notification of fire code violations on April 22, 2022. *See* ECF No. 8-3. Thus, while Defendant may suffer a loss of income or capital, and may experience some job losses, Defendant largely brought these harms upon itself. *See Bad Ass Coffee Co. of Hawaii, Inc. v. JH Nterprises, L.L.C.*, 636 F. Supp. 2d 1237, 1251 (D. Utah 2009 (granting injunctive relief despite the fact that the defendants would likely lose capital and jobs because they "had several courses of action that [they] could have taken that would have avoided or lessened these harms, but they did not"); *Second City Music, Inc. v. City of Chi., Ill.*, 333 F.3d 846, 850 (7th Cir. 2003) ("Injury caused by failure to secure a readily available license is self-inflicted, and self-inflicted wounds are not irreparable injury."); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) ("[S]elf-inflicted wounds are not irreparable injury.") (quoting *Second City Music, Inc.*, 333 F.3d at 850). In addition, Defendant primarily alleges monetary injury which "is not normally considered irreparable." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980); *see also State v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1076 (N.D. Cal. 2018) ("Weighed against the likely environmental injury, which cannot be undone, the financial costs of compliance are not as significant as the increased gas emissions, public health harms, and pollution.").

For these reasons, the balance of equities tips in favor of granting a preliminary

1    injunction.[2]

2         **D.      Public Interest**

3         Granting a preliminary injunction to ensure compliance with the CAA is in the public

4    interest. *Gear Box Z*, 526 F. Supp. 3d at 529 ("Congress enacted the CAA to combat air pollution,

5    which itself is a declaration of public policy. The public interest in halting Defendant's acts that

6    likely violate the CAA outweighs Defendant's interest in continuing to operate a private

7    business."); *REV 973 LLC v. Mouren-Laurens*, No. CV 98-10690 AHM (Ex), 2010 WL 383615,

8    at *7 (C.D. Cal. Jan. 25, 2010) (finding that public interest weighs in favor of injunction where

9    "removing one source of contamination will reduce the threat of harm to environmental and public

10   health").

11        **E.      Bond Requirement**

12        "The court may issue a preliminary injunction or a temporary restraining order only if the

13   movant gives security in an amount that the court considers proper to pay the costs and damages

14   sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P.

15   65(c). The Court may waive the bond requirement or set a nominal bond in public interest

16   environmental cases to prevent "the potential chilling effect on litigation to protect the

17   environment and the public interest." *Landwatch v. Connaughton*, 905 F. Supp. 2d 1192, 1198

18   (D. Or. 2012) (citing *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning*

19   *Agency*, 766 F.2d 1319 (9th Cir. 1985)). This preliminary injunction implicates the public's

20   interest in protecting the environment and public health, "Plaintiff is a non-profit environmental

21   justice organization with an all-volunteer board of directors and very limited financial resources,"

22   and Defendant does not request a bond. ECF No. 8-1 at 8. The Court therefore grants Plaintiff's

23   request, *id.*, and orders Plaintiff to post a nominal bond in the amount of $100.

24   / / /

25

26   [2] Defendant also argues that it is "making continuous progress on its work to restore reliable electrical power to the Properties and remove the diesel generators." ECF No. 18 at 5; *see also*
27   ECF No. 18-1 at 2 ("Green Sage is working on restoring reliable electrical power at the Properties."). It offers no evidence in support of this assertion. It also fails to describe the efforts
28   it has made to date or when those efforts will be completed. The Court accordingly gives the statement little weight.

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, the Court grants Plaintiff's motion for a preliminary injunction. Defendant is hereby restrained and enjoined from operating any and all portable generators at or around 5601 and 5733 San Leandro Street, Oakland, California 94621 without first obtaining the permits required under the Clean Air Act. For clarity, any unpermitted operation must immediately cease. This order is effective on Plaintiff filing an undertaking in the sum of $100.

**IT IS SO ORDERED.**

Dated:  August 23, 2022



JON S. TIGAR
United States District Judge